## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

COURTNEY SMITH, *a/k/a*
COURTNEY ALEXANDER,

     Plaintiff,                        Case No.:

v.                                   Hon.

FORD FIELD MANAGEMENT, LLC,

     Defendant.

_____

DAVID A. NACHT (P47034)
NACHTLAW, P.C.
*Attorney for Plaintiff*
501 Avis Drive, Suite 3
Ann Arbor MI 48108
Telephone: (734) 663-7550
dnacht@nachtlaw.com

_____

### PLAINTIFF'S COMPLAINT AND JURY DEMAND

     Plaintiff Courtney Smith, *a/k/a* Courtney Alexander, by and through her attorneys, NACHTLAW, P.C., brings this action against Defendant Ford Field Management, LLC, hereby alleging as follows:

### INTRODUCTION

     1.    Plaintiff brings this civil rights action pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*., Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), the Americans with Disabilities Act ("ADA"), 42 U.S.C § 12101 et *seq.*, the Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L. § 37.2201 *et seq.*, and the Persons with Disabilities Civil Rights Act ("PWDCRA"), M.C.L. § 37.1101 *et seq.*

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1343(a)(4) (civil rights claims).

3. Supplemental jurisdiction over Plaintiff's state law claims is proper pursuant to 28 U.S.C. § 1367, as they arise out of the same case and controversy.

4. Venue is proper in the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred within this district.

5. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of her age. Plaintiff received her Notice of Right to Sue on May 9, 2024.

## PARTIES

6. Plaintiff Courtney Alexander is a 53-year-old disabled Black woman, former employee of Defendant Ford Field Management, LLC, and resident of Redford, Wayne County, Michigan.

2

7.     Defendant Ford Field Management, LLC is a Michigan limited liability company located in Detroit, Wayne County, Michigan, engaged in the operation and management of Ford Field, home of the Detroit Lions.

## FACTUAL ALLEGATIONS

8.     Plaintiff worked for Defendant for 20 years beginning in August of 2002, when she started working at Ford Field as a temporary employee.

9.     Plaintiff was hired full time in April of 2003.

10.     Plaintiff was promoted to Director of Guest Services for Defendant in 2008.

11.     Plaintiff has suffered from arthritis for over a decade and her symptoms started to worsen dramatically in 2018 as a result of age and the wear and tear of her job, which required frequent walking on concrete floors, standing for 6-9 hours on game and event days, etc.

12.     Around the same time, Plaintiff also began suffering from severe fatigue.

13.     In March of 2019, Plaintiff was diagnosed with lupus and a chronic form of arthritis called ankylosing spondylitis, which causes inflammation in the joints, eyes, and ligaments of the spine.

14.     Both conditions are serious, debilitating autoimmune diseases and permanent disabilities.

15.     Plaintiff's lupus flare-ups are triggered and/or made worse by emotional and/or physical stress.

16.     As a result of her conditions, Plaintiff moves and walks slower at times due to neck, back, and hip pain.

17.     Many times, events would conclude late at night and occur back-to-back, making it extremely challenging for Plaintiff to get up in the mornings due to pain and stiffness.

18.     In March of 2019, Plaintiff applied for and was granted intermittent FMLA leave.

19.     At this time, she met with her then-supervisor, Todd Argust, and Defendant's Human Resources ("HR") director, Amy Lemon, to discuss her disability, explain her limitations, and inform them of the accommodations she needed, including leave for ongoing medical appointments, outpatient procedures, and physical therapy, and adequate rest between shifts.

20.     Despite this, Defendant continued to require Plaintiff to work events with long shifts, often with extremely limited breaks in between.

21.     During the COVID stay-at-home order, Plaintiff was expected to come into the office before she was fully vaccinated, in contravention of her doctor's orders and even though the office was closed.

22.    In February of 2021, Plaintiff underwent retina surgery, and was out on leave in recovery until mid-March.

23.    On April 28, 2021, both Plaintiff's husband and son tested positive for COVID, and her family was required to quarantine for 15 days. Her son was just 5 years old at the time and her husband was hospitalized for 8 days.

24.    As a result of Plaintiff's inability to come into the office during this time, Defendant characterized her as lazy and faulted her for not working as hard as everyone else, and her coworkers began turning her direct reports against her.

25.    This created an extremely uncomfortable and stressful work environment in which Plaintiff's coworkers ostracized her and treated her unfairly.

26.    Plaintiff continued to work hard, completing all her assignments both remotely and in person once she was fully vaccinated.

27.    Despite the ongoing harassing and patronizing communication she was receiving, at no point did she reject an assignment or refuse to work.

28.    In 20 years of employment, Plaintiff only missed a single football game or full stadium event, which occurred during her maternity leave in 2015.

29.    Throughout her employment, Plaintiff also dealt with ongoing subtle racial discrimination and microaggressions.

30.    Defendant's employees were largely white during Plaintiff's employment, and she and her few minority coworkers worked in fear and were often

too intimidated to speak up about problems or issues they were dealing with.

31.     The experience of being a racial minority working for Defendant was to feel looked down on and replaceable.

32.     Defendant must follow both Detroit and Wayne County policies for hiring women and minorities, and it used part-time staff members to attempt to meet this requirement, as approximately 90% of the full-time staff at Ford Field is white.

33.     In September of 2021, Defendant created a Diversity, Equity, Inclusion and Belonging Council, 2/3 of the members of which were white, with the stated goal of making the organization more inclusive.

34.     Giving Defendant the benefit of the doubt and wanting to improve her workplace, Plaintiff volunteered to become a member of the committee and shared her hope that Defendant would hire more people of color, especially in the Detroit area.

35.     Despite these efforts, all the interns Defendant hired for the following summer were white.

36.     During meetings with the Chief Diversity Officer Lindsay Verstegen, Plaintiff voiced her concerns several times about Defendant's failure to hire minorities. Ms. Verstegen responded that she did not believe in quotas.

37.     Plaintiff, one of six Department Directors reporting to Mr. Argust, was also treated materially less favorably than the other, younger and/or white Directors.

38.    Mr. Argust developed close, friendly relationships with Plaintiff's younger white peers while maintaining a distant, even antagonistic relationship with Plaintiff.

39.    Two other younger white Directors, Jamie Hall and Laurie Clayton, were frequently permitted to work from home during the pandemic without suffering the harassment and retaliation Defendant piled on Plaintiff whenever she was out of the office.

40.    While policy exceptions and compassion were extended to these younger white Directors based on their own family and personal issues, Plaintiff was held to the harshest standards despite her debilitating medical conditions.

41.    Plaintiff also experienced retaliatory treatment as a result of her pursuit of FMLA leave and attempts to secure accommodation for her disabilities, including a baseless and unjustifiably poor performance evaluation based on discriminatory and retaliatory animus instead of her actual work performance.

42.    Mr. Argust informed her directly that he had rated everyone else in the department much higher than her.

43.    As a result, Plaintiff did not receive an opportunity for her salary to be evaluated during an equal pay initiative and she was denied a cost-of-living salary increase.

44.    In January of 2022, Plaintiff submitted a memorandum of rebuttal to

7

dispute the low rating and the discriminatory and retaliatory treatment she was suffering.

45.    In direct response to this memorandum, she was immediately treated differently by her peers and leadership, and instead of being remedied, the discriminatory and retaliatory treatment she faced only escalated.

46.    Plaintiff was so shaken by this escalation that she was terrified to take any time off work for physical therapy or when she was sick, pushing herself beyond her limits.

47.    HR facilitated meetings between Plaintiff and Mr. Argust in an attempt to remedy the ongoing issues, but Mr. Argust continued to intimidate Plaintiff with his attitude, cold demeanor, and unwillingness to improve the relationship and move forward.

48.    Mr. Argust directly stated to Plaintiff: "someone has been talking about you and as a result everyone has turned against you."

49.    As a result, Plaintiff was effectively demoted; she would now report to Operations Director Kristen Dale and the staff that had reported to Plaintiff were removed from her supervision without explanation.

50.    Ms. Verstegen immediately cancelled their regularly scheduled mentoring meetings without explanation.

51.     Administration and staff also made false, discriminatory, and retaliatory statements about Plaintiff and her work, baselessly portraying her as someone who was not a team player and did not work as hard as the rest of Defendant's team.

52.     Plaintiff's job description was changed twice in quick succession, with extremely limited communication from her superiors about changes in her responsibilities or what was expected of her.

53.     In preparation for a small conference being held at Ford Field July 15-17, 2022, Plaintiff proposed to her new supervisor Ms. Dale that she work all day and evening on Friday the 15th but not over the weekend, as she was unlikely to be needed, which Ms. Dale agreed to.

54.     About a week after the conference, to Plaintiff's total shock, Mr. Argust stormed into her office, furiously berating her for not working over the entire weekend, despite having received approval for this from her supervisor.

55.     Approximately a week after that, Plaintiff was summarily terminated.

56.     Plaintiff's former direct report is 26 years old and was made responsible for many of Plaintiff's former duties.

## COUNT I
## Interference in Violation of the Family and Medical Leave Act
## 29 U.S.C. § 2615(a)(1)

57.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

58.     Defendant is an employer covered by the FMLA pursuant to 29 U.S.C. § 2601 *et seq*. because it is a private business that employed fifty or more employees for each working day for at least twenty workweeks in the year prior to Plaintiff's leave.

59.     Plaintiff is an FMLA-eligible employee because she was employed by Defendant for many years prior to requesting FMLA leave and had been employed by Defendant for over 1,250 hours in the twelve-month period prior to her request.

60.     Plaintiff was entitled to FMLA leave because of her medical conditions and required treatments.

61.     In accordance with the FMLA, Plaintiff notified Defendant of her need to take intermittent leave and her request was approved by Defendant in March of 2019.

62.     Despite this, Defendant engaged in prohibited conduct under the FMLA by interfering with, restraining, or denying Plaintiff's rights provided under the Act when it punished her for taking necessary medical leave.

63.     Among other things, Defendant interfered with Plaintiff's FMLA rights by requesting that she work during her leave, penalizing her professionally for taking leave, and ultimately terminating her for, *inter alia*, medically necessary absences from the office.

64.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has suffered and continues to suffer substantial losses, including emotional distress and past and future lost wages and benefits. Plaintiff is also entitled to liquidated damages, attorneys' fees and costs, and all other damages recoverable by law.

## COUNT II
**Retaliation in Violation of the Family and Medical Leave Act**
**29 U.S.C. § 2615(a)(2)**

65.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

66.     Plaintiff exercised her FMLA rights by requesting intermittent FMLA leave in March of 2019.

67.     Plaintiff was qualified for her position and had performed her job duties effectively prior to the acts complained of herein.

68.     Plaintiff suffered an adverse employment action when Defendant terminated her.

69.     Defendant's expressed reasons for Plaintiff's termination include admissions that Plaintiff was terminated for her absences from the office.

70.     Plaintiff's FMLA leave was a factor in Defendant's decision to terminate her.

71.    Defendant's conduct constitutes unlawful retaliation against Plaintiff in violation of her rights under the FMLA, 29 U.S.C. § 2615(a).

72.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has suffered and continues to suffer substantial losses, including emotional distress and past and future lost wages and benefits. Plaintiff is also entitled to liquidated damages, attorneys' fees and costs, and all other damages recoverable by law.

## COUNT III
### Race Discrimination in Violation of Title VII
### 42 U.S.C. § 2000e *et seq.*

73.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

74.    At all relevant times, Defendant employed greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b) and (f).

75.    Section 2000e-2 makes it an unlawful employment practice "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race…"

76.    Plaintiff was qualified for her position and had performed her job duties effectively prior to the acts complained of herein.

12

77.     Defendant subjected Plaintiff to intentional discrimination based on her race by treating her less favorably than similarly situated white coworkers in the terms and conditions of her employment.

78.     Bias against people of color was a motivating factor behind Defendant's discriminatory treatment of Plaintiff, up to and including her termination.

79.     Defendant applied its policies and procedures in a manner that discriminated against Plaintiff on the basis of race, causing her serious and unjustified damage.

80.     Based on the foregoing, Plaintiff was subjected to biased, prejudiced, and unfair treatment in violation of Title VII.

81.     Defendant's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling her to punitive damages.

82.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

**<u>COUNT IV</u>**
**Age Discrimination in Violation of the ADEA**
**29 U.S.C. § 621 *et seq*.**

83.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

84.    At all relevant times, Defendant was an employer with more than 20 employees, and Plaintiff was an employee covered by and within the meaning of the ADEA.

85.    Plaintiff is a member of a protected group because she is over the age of 40.

86.    Defendant was predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

87.    Defendant subjected Plaintiff to intentional discrimination based on her age by treating her less favorably than similarly situated younger coworkers in the terms and conditions of her employment.

88.    But for Plaintiff's age, Defendant would not have subjected her to this disparate treatment.

89.    Defendant's actions constitute unlawful discrimination against Plaintiff because of her age pursuant to 29 U.S.C. § 623(a).

90.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to loss of income; loss of career opportunities and earning capacity; mental

and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

**COUNT V**
**Disability Discrimination in Violation of the ADA**
**42 U.S.C § 12101 *et seq*.**

91.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

92.    Plaintiff was a disabled individual under the ADA.

93.    Defendant was an employer within the meaning of § 101(7) of the ADA, 42 USC 12111 (5) (a) and (7).

94.    Plaintiff was qualified to perform the essential functions of her job, with or without reasonable accommodation.

95.    Plaintiff repeatedly sought reasonable accommodation for her disabilities and was ignored.

96.    Defendant did not engage in the required interactive process.

97.    Defendant discriminated against Plaintiff based on her disabilities and terminated her employment in retaliation for her attempts to secure reasonable accommodation for them.

98.     The reasons provided by Defendant for termination were false and pretextual.

99.   Defendant's refusal to accommodate Plaintiff's disabilities constituted discrimination in violation of the ADA.

100.   Defendant's termination of Plaintiff's employment constituted discrimination and/or retaliation in violation of the ADA, because of Plaintiff's protected activity in asserting her right to an accommodation.

101.   In the alternative, Defendant's discrimination against Plaintiff on the basis of her disability was a motivating factor in her termination.

102.   As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## COUNT VI
## Race Discrimination in Violation of ELCRA
### M.C.L. § 37.2201 *et seq*.

103.   Plaintiff incorporates the preceding allegations as if fully restated herein.

104.   At all relevant times, Plaintiff was an employee and Defendant was an employer as defined by ELCRA.

105.   ELCRA prohibits discrimination in employment on the basis of race.

106.   Plaintiff was qualified for her position and had performed her job duties effectively prior to the acts complained of herein.

107.   Defendant subjected Plaintiff to intentional discrimination based on her race by treating her less favorably than similarly situated white coworkers in the terms and conditions of her employment.

108.   Bias against people of color was a motivating factor behind Defendant's discriminatory treatment of Plaintiff, up to and including her termination.

109.   Defendant applied its policies and procedures in a manner that discriminated against Plaintiff on the basis of race, causing her serious and unjustified damage.

110.   Based on the foregoing, Plaintiff was subjected to biased, prejudiced, and unfair treatment in violation of ELCRA.

111.   Defendant acted willfully.

112.   As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## COUNT VII
## Age Discrimination in Violation of ELCRA
## M.C.L. § 37.2201 *et seq.*

113.   Plaintiff incorporates the preceding allegations as if fully restated herein.

114.   At all relevant times, Plaintiff was an employee and Defendant was an employer as defined by ELCRA.

115.   ELCRA prohibits discrimination in employment on the basis of age.

116.   Plaintiff was qualified for her position and had performed her job duties effectively prior to the acts complained of herein.

117.   Defendant subjected Plaintiff to intentional discrimination based on her age by treating her less favorably than similarly situated younger coworkers in the terms and conditions of her employment.

118.   Bias against older workers was a motivating factor behind Defendant's discriminatory treatment of Plaintiff, up to and including her termination.

119.   Defendant applied its policies and procedures in a manner that discriminated against Plaintiff on the basis of age, causing her serious and unjustified damage.

120.   Based on the foregoing, Plaintiff was subjected to biased, prejudiced, and unfair treatment in violation of ELCRA.

121.   Defendant acted willfully.

122.   As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## COUNT VIII
### Disability Discrimination in Violation of the PWDCRA
### M.C.L. § 37.1101 *et seq.*

123.   Plaintiff incorporates the preceding paragraphs as if fully restated herein.

124.   Plaintiff is disabled as defined by MCL § 37.1103.

125.   Defendant is an employer as defined by MCL § 37.1201.

126.   Plaintiff was qualified to perform the essential functions of her job, with or without reasonable accommodation.

127.   Plaintiff repeatedly sought reasonable accommodation for her disabilities and was ignored.

128.   Defendant did not engage in the required interactive process.

129.   Defendant discriminated against Plaintiff based on her disabilities and terminated her employment in retaliation for her attempts to secure reasonable accommodation for them.

130.   The reasons provided by Defendant for termination were false and pretextual.

131.   Defendant acted willfully.

132.   Defendant's refusal to accommodate Plaintiff's disabilities constituted discrimination in violation of the PWDCRA.

133.   Defendant's termination of Plaintiff's employment constituted discrimination and/or retaliation in violation of the PWDCRA, because of Plaintiff's protected activity in asserting her right to an accommodation.

134.   In the alternative, Defendant's discrimination against Plaintiff on the basis of her disability was a motivating factor in her termination.

135.   As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff prays that this Honorable Court grant the following remedies:

a.   Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of the FMLA,

20

Title VII, the ADEA, the ADA, ELCRA, and the PWDCRA;

b.    Award Plaintiff all lost wages, past and future, to which she is entitled;

c.    Award Plaintiff compensatory damages;

d.    Award Plaintiff punitive and exemplary damages;

e.    Award Plaintiff reasonable attorney's fees, costs, and interest;

f.    Award such other relief as this Court deems just and proper.

Respectfully submitted,

_____/s/ David A. Nacht
David A. Nacht (P47034)
**NACHTLAW, P.C**
*Attorneys for Plaintiff*
501 Avis Drive, Suite 3
Ann Arbor, MI 48108
(734) 663-7550
dnacht@nachtlaw.com

Dated: August 7, 2024

21

## DEMAND FOR JURY TRIAL

Now comes Plaintiff Courtney Smith, *a/k/a* Courtney Alexander, by and though her attorneys, NACHTLAW, P.C. and hereby demands a trial by jury in the above captioned matter.

Respectfully submitted,

/s/ David A. Nacht
David A. Nacht (P47034)
**NACHTLAW, P.C.**
*Attorneys for Plaintiff*
501 Avis Drive, Suite 3
Ann Arbor, MI 48108
(734) 663-7550
dnacht@nachtlaw.com

Dated: August 7, 2024